T.C. Memo. 2000-279


UNITED STATES TAX COURT


DERECO, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 893-98.                    Filed August 30, 2000.


Herbert W. Linder, for respondent.


MEMORANDUM OPINION

PARR, Judge:  This case is before us on respondent's motion to dismiss for lack of prosecution.  Because of the relief sought therein, we treat the motion as a motion to dismiss for lack of prosecution as to the deficiencies and a motion for default as to the additions to tax for fraud.

Respondent determined the following deficiencies in

petitioner's Federal income taxes, and additions to tax for fraud, for petitioner's tax years ended September 30:

| | | Additions to Tax | | |
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(b)(1)(A) | 6653(b)(1)(B) | 6653(b) |
| 1988 | $247,112 | $185,334 | [1] | -- |
| 1989 | 195,154 | -- | -- | $139,746 |

[1] 50 percent of the interest due on $247,112.

All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

At the time the petition in this case was filed by D.J. Marino, an officer of petitioner, petitioner's office was located in Cleveland, Ohio.

## Background

The petition filed in this case generally disputed respondent's adjustments to petitioner's income. Respondent's answer denied the material allegations of the petition and further alleged:

> 6. FURTHER ANSWERING the petition, and in support of the determination that the underpayments of tax required to be shown on petitioner's tax returns for the tax years ending September 30, 1988, and September 30, 1989, are due to fraud, the respondent alleges:
> (a) Donald J. Marino was the president and major shareholder of, and had direct control over, petitioner during the years at issue.
> (b) Petitioner paid certain personal expenses of Donald J. Marino and his family.
> (c) On December 22, 1987, petitioner's president Donald J. Marino purchased a diamond necklace, diamond tennis bracelet, and two sets of diamond earrings from

a company known as Merka Jewelry and Trophies, Inc., for $29,550.00.

(d) On December 22, 1987, petitioner's president Donald J. Marino paid $25,000.00 of the purchase price described in subparagraph (c), above, with petitioner's corporate check.

(e) When questioned by respondent's agent regarding the payment described in subparagraph (d), above, petitioner's president Donald J. Marino stated that the purchase was for trophies.

(f) The $25,000.00 payment described in subparagraph (d), above, was included in petitioner's cost of goods sold on its tax return for the year ended September 30, 1988.

(g) Petitioner provided funds to its president Donald J. Marino to pay his and his family members' personal expenses during the tax year ended September 30, 1988, in the amount of $253,602.00.

(h) Petitioner deducted $148,282.00 of the amount described in subparagraph (g), above, as travel and entertainment expenses on its tax return for the year ended September 30, 1988.

(i) Petitioner deducted $105,320.00 of the amount described in subparagraph (g), above, as research and development expense on its tax return for the year ended September 30, 1988.

(j) Petitioner directly paid and provided funds to its president Donald J. Marino to pay his and his family members' personal expenses during the tax year ended September 30, 1989, in the amount of $152,706.00.

(k) Petitioner deducted the $152,706.00 amount described in subparagraph (j), above, as travel and entertainment expenses on its tax return for the year ended September 30, 1989.

(l) Petitioner's president Donald J. Marino endorsed and deposited a check in the amount of $27,716.00 payable to petitioner from J&L Steel into his personal bank account.

(m) The $27,716.00 described in subparagraph (l), above, constitutes taxable income to petitioner for the tax year ended September 30, 1988, which income was not reported on its tax return.

(n) Petitioner deducted on its tax return for the year ended September 30, 1988, subcontractor expenses in the amount of $651,871.00.

(o) Petitioner only paid or incurred $294,801.00 of the subcontractor expenses described in subparagraph (n), above.

(p) The remaining $357,070.00 of the subcontractor expenses described in subparagraph (n), above, were never paid or incurred by petitioner.

(q) Petitioner deducted a depreciation expense in the amount of $93,208.00 on its tax return for the year ended September 30, 1989.

(r) Of the depreciation expense described in subparagraph (q), above, $37,058.00 was taken on equipment not owned by petitioner and/or not in existence.

(s) Petitioner deducted repairs and maintenance expenses in the amount of $254,708.00 on its tax return for the year ended September 30, 1989.

(t) Of the repairs and maintenance expense described in subparagraph (s), above, $37,780.00 was neither paid nor incurred.

(u) Petitioner deducted a telephone expense in the amount of $8,128.00 on its return for the year ended September 30, 1989.

(v) Of the telephone expense described in subparagraph (u), above, $4,860.00 was neither paid nor incurred.

(w) Petitioner deducted an advertising expense in the amount of $88,102.00 on its tax return for the year ended September 30, 1989.

(x) Of the advertising expense described in subparagraph (w), above, $20,307.00 was neither paid nor incurred.

(y) Petitioner deducted a dues and education expense in the amount of $7,913.00 on its tax return for the year ended September 30, 1989.

(z) Of the dues and education expense described in subparagraph (y), above, $3,130.00 was neither paid nor incurred.

(aa) Petitioner deducted as other costs equipment rental in the amount of $48,438.00 on its tax return for the year ended September 30, 1989.

(ab) Of the equipment rental cost described in subparagraph (aa), above, $28,500.00 was neither paid nor incurred.

(ac) Petitioner deducted on its tax return for the year ended September 30, 1989, subcontractor expenses in the amount of $563,402.00.

(ad) Petitioner only paid or incurred $366,822.00 of the subcontractor expenses described in subparagraph (ac), above.

(ae) The remaining $196,580.00 of the subcontractor expenses as described in subparagraph

(ac), above, were never paid or incurred by petitioner.

Finally, in subparagraphs (af) through (am), respondent asserted that the omission of income and erroneous deductions were due to fraud, and that petitioner understated its tax liabilities for its taxable years 1988 and 1989 with the intent to evade tax.

Petitioner did not file a reply. Respondent filed a motion under Rule 37(c) asking the Court to deem admitted the affirmative allegations set forth in paragraph 6 of his answer. On October 27, 1998, petitioner was served with that motion together with notice that if petitioner filed its reply as required by Rule 37(a) and (b) on or before November 20, 1998, respondent's motion would be denied; however, if petitioner did not file a reply as directed, the Court would grant respondent's motion and deem admitted the affirmative allegations in the answer.

Petitioner did not respond to respondent's motion or the Court's notice. Petitioner never filed its reply. Accordingly, on November 27, 1998, the Court granted respondent's Rule 37(c) motion and deemed admitted the affirmative undenied allegations of respondent's Answer. On November 30, 1998, a copy of that order was served upon petitioner.

On October 19, 1999, the Court served its notice setting this case for trial on March 20, 2000, at a trial session of this

Court in Cleveland, Ohio. The notice, in pertinent part, states: "YOUR FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU. * * * YOUR FAILURE TO COOPERATE MAY ALSO RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU."

Petitioner did not appear when the case was called from the calendar. When petitioner did not appear at trial, respondent advised the Court that he would not present any testimony on the issue of the additions to tax for fraud; instead, respondent would rely on the deemed admissions to carry his burden of proof on this issue.

All material allegations in the petition have been denied in respondent's answer. No issues have been raised as to petitioner upon which the burden of proof is on respondent except the fraud issue, and respondent has not conceded any error assigned in the petition.

## Discussion

### Deficiency Determination

Respondent's determinations of fact are presumptively correct, and petitioner bears the burden of proving otherwise. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner has clearly failed to meet its burden and, in any event, the deemed admitted affirmative allegations in respondent's answer establish the deficiencies. See Doncaster v.

Commissioner, 77 T.C. 334, 336 (1981); Gilday v. Commissioner, 62 T.C. 260, 261 (1974). Accordingly, we sustain respondent's determinations as to the deficiencies.

## Determination of Fraud

Respondent also moved for judgment on the fraud issue based on the affirmative allegations of fact contained in respondent's answer, which were deemed admitted by the order of this Court pursuant to Rule 37(c). Respondent has the burden of proving that some portion of each underpayment is due to fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b); Parks v. Commissioner, 94 T.C. 654, 660 (1990).

The facts deemed admitted establish that during the years at issue, petitioner regularly deducted expenses that it had not paid or incurred, including expenses of equipment that petitioner did not own or that did not exist; that petitioner deducted as business expenses amounts that were paid to its president for expenses of his family; that petitioner omitted income; and that petitioner, through its president, intentionally made false and misleading statements to respondent's agents during the examination of petitioner's income tax returns. Finally, petitioner has failed to comply with the Court's pretrial orders or the Court's other orders and failed to appear for the scheduled trial--additional indications of deliberate efforts by petitioner to conceal the facts concerning its tax liability.

See <u>Collins v. Commissioner</u>, T.C. Memo. 1997-291.

Rule 123 provides that the failure of a party to appear at trial or other hearing may result in an entry of decision against such party.[1]  We find the facts deemed admitted sufficient to satisfy respondent's burden of proving fraud.  The foregoing circumstances and above-pleaded admitted facts clearly establish that petitioner fraudulently underpaid its Federal income taxes for the years at issue.  See <u>Smith v. Commissioner</u>, 91 T.C. 1049, 1058-1059 (1988), affd. 926 F.2d 1470 (6th Cir. 1991); <u>Doncaster v. Commissioner</u>, <u>supra</u> at 337.  Accordingly, we are satisfied that the additions to tax for fraud should be sustained by entry of an order pursuant to Rule 123.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.

---

[1]Rule 123 provides in part:

   (a) Default:  If any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, then such party may be held in default by the Court either on motion of another party or on the initiative of the Court.  Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions * * * as the Court may deem appropriate.  * * *